UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JUAN AVILA, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action Nos.: | 18-cv-2416-RC |
| | : | | 19-mc-117-RC |
| | : | | |
| v. | : | Re Document Nos.: | 9 (18-cv-2416) |
| | : | | 1 (19-mc-117) |
| | : | | |
| LINCOLN PROPERTY COMPANY | : | | |
| COMMERCIAL, INC., *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

**DENYING PLAINTIFFS' MOTION TO QUASH**

**GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER**

**I. INTRODUCTION**

On October 22, 2018, Juan Avila and Duane Burrows (collectively "Plaintiffs"), filed a sixteen-count complaint against Lincoln Property Company Commercial, Inc. ("LPC Commercial") and Lincoln Property Company ("LPC Company"). Plaintiffs, former employees of Defendant LPC Commercial, allege that they were forced to resign due to national origin and race-based discrimination and harassment. On April 22, 2019 and April 29, 2019, Defendant LPC Commercial issued subpoenas *duces tecum* to Plaintiffs' respective healthcare providers. Now pending are Plaintiffs' Motion for a Protective Order and Plaintiffs' nearly identical Motion to Quash. In both motions, Plaintiffs contest Defendant LPC Commercial's subpoenas largely on the grounds that medical information is privileged under Maryland and District of Columbia law. For reasons explained below, the Court finds that Plaintiffs have waived their physician-patient privilege over the information at issue and, as such, this information is discoverable. However, the Court will exercise its discretion to limit the scope of discovery over Plaintiffs'

medical information.  Therefore, the Court will deny Plaintiffs' Motion to Quash under Federal Rules of Civil Procedure 45(a)(4) and 45(d)(3)(A)(iii).  The Court will grant in part and deny in part Plaintiffs' Motion for a Protective Order under Federal Rules of Civil Procedure 26(c)(1)(A) and 26(c)(3).

## II. FACTUAL BACKGROUND

Plaintiffs allege both national origin and race-based discrimination and retaliation under local and federal statutes.  *See* Compl. ¶¶ 16–25, ECF No. 1.  Each Plaintiff seeks to recover five million dollars in damages, including compensatory damages for emotional distress.  *See id*.  In their Complaint, Plaintiffs allege that they suffered from stress as a result of the alleged actions by Defendants and their agents.  *See* Compl. ¶¶ 66–68 (alleging Plaintiff Burrows "suffered from physical manifestations of stress, including, but not limited to, difficulty sleeping and panic attacks"); *id.* at 88 (alleging that "[o]n or about September 22, 2016, Mr. Avila saw his doctor, who recommended that Mr. Avila not return to work . . . due to work-related stress").  In response to Defendant LPC Commercial's first set of discovery requests, Plaintiffs provided documents, including therapy notes from medical professionals and select medical records, elaborating the bases for their compensatory damages.  *See* Pls.' Mot. Prot. Ord. at 4–6 (18-cv-2416), ECF No. 9; Defs.' Opp'n Mot. Prot. Ord. at 4–7 (18-cv-2416), ECF No. 10.

According to these documents, both Plaintiffs not only received medical attention for stress related symptoms, but also required leave from work as a result of their severe stress.  *See* Defs.' Opp'n Mot. Prot. Ord., Ex. 7 at 55; Defs.' Opp'n Mot. Prot. Ord., Ex. 6 at 105–07.  Plaintiffs suffered physical manifestations of their stress, including panic attacks.  *See* Defs.' Opp'n Mot. Prot. Ord., Ex. 7 at 55; Defs.' Opp'n Mot. Prot. Ord., Ex. 6 at 3, 105–06.  Plaintiff Burrows suffered from "mental-health related episodes" three times a week for a duration of

eight hours per episode, resulting in his taking leave for over three months. Defs.' Opp'n Mot. Prot. Ord., Ex. 7 at 55. Meanwhile, Plaintiff Avila was diagnosed with anxiety and depression. Defs.' Opp'n Mot. Prot. Ord., Ex. 6 at 105. In his Charge for Discrimination filed with the U.S. Equal Employment Opportunity Commission, Plaintiff Avila is described as "so emotional[ly] debilitated that he sought doctor's assistance and was prescribed medication." *Id.* at 3.

On April 22, 2019, Defendants served a Notice of Subpoena on Plaintiffs, informing Plaintiffs that Defendant LPC Commercial had served subpoenas *duces tecum* for records from four of Plaintiffs' medical providers.[1] Pls.' Mot. Prot. Ord. at 6. Defendant served subpoenas ("the Subpoenas") for medical and personal records dating ten years back through the present. *Id*. at 7. On May 10, 2019, Plaintiffs filed a Motion for a Protective Order prohibiting Defendants from taking or seeking discovery of Plaintiffs' mental health or medical conditions. *See* Pls.' Mot. Prot. Ord. On the same day, Plaintiffs filed an almost identical Motion to Quash Defendant LPC Commercial's subpoenas *duces tecum* in the United States District Court for the Eastern District of Virginia. *See* Pls.' Mot. to Quash (19-mc-117), ECF No. 5. Contemporaneously, Plaintiffs also filed a Motion to Transfer the subpoena-related dispute to this Court. *See* Pls.' Mot. to Transfer (19-mc-117), ECF No. 2. On June 21, 2019, Plaintiffs' Motion to Quash was transferred to this Court. *See* Order Granting Mot. to Transfer (19-mc-117), ECF 10; Pls.' Mot. to Quash (19-mc-117), ECF No. 1.

---

[1] Defendant issued and served subpoenas *duces tecum* upon (1) Ulnacs Medical Care, P.C., 1809 Benning Road, N.E., Washington, D.C. 20002; (2) Phillips & Green, M.D., Ltd., 8403 Colesville Road, #160, Silver Spring, Maryland 20910; (3) Blanca I. Brana, LCPC, 11249 Lockwood Drive, Suite C, Silver Spring, Maryland 20901; and (4) Horacio G. Schapiro, M.D., 818 18th Street, N.W., Suite 950, Washington, D.C. 20006.

## III. LEGAL STANDARDS

### A. Waiver of Physician-Patient Privilege

Under Federal Rule of Civil Procedure 26(b), "[u]nless otherwise limited by court order . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b). Plaintiffs move to prevent disclosure of their medical information largely on the grounds that this information is privileged. *See generally* Pls.' Mot. Prot. Ord.; Pls.' Mot. to Quash. Under both District of Columbia and Maryland law, the contents of a patient's mental health and medical records are privileged by statute. *See* D.C. Code § 14-307(a); Md. Code, Health–Gen. §§ 4-302–4-307; Md. Code, Cts. & Jud. Pro. § 9-109.[2] However, under District of Columbia law a "patient may waive or be deemed to have waived the physician-patient privilege . . . by filing a lawsuit which places in issue the patient's medical condition." *Porter v. Pinkerton Gov't Servs., Inc.*, 304 F.R.D. 24, 29 (D.D.C. 2014) (citing *Nelson v. United States,* 649 A.2d 301, 308 (D.C. 1994)). A patient may therefore waive the physician-privilege by relying on the provider's "diagnoses or treatment in making or defending [his] case." *Id.* The threshold for waiver of the physician-patient privilege afforded by Maryland law is substantially similar, if not slightly lower. *See Meyer v. McDonnell*, 392 A.2d 1129, 1135 (Md. Ct. Spec. App. 1978) (finding privilege waived where "[a]ppellant claimed damages for his mental or emotional disorders in his declaration, in testimony, and in his request for instructions"); *Butler-Tulio v.*

---

[2] Under Fed. R. Evid. 501, "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." While Plaintiffs bring claims against Defendants under both federal and state statutes, the Court need not decide which law applies because Defendants have not contested the application of District of Columbia and Maryland law. *See Porter*, 304 F.R.D. at 29. Therefore, the Court will apply District of Columbia and Maryland law, respectively, to the privilege assertions.

*Scroggins*, 774 A.2d 1209, 1219 (Md. Ct. Spec. App. 2001) (finding that "[a]n express exception to the confidentiality [requirement] . . . is when a patient puts his or her medical condition at issue in a civil action").

Under District of Columbia law, however, a patient has not waived privilege by making allegations of mere "garden variety" emotional distress, "of the kind an ordinary person might experience following an episode of discrimination." *Porter*, 304 F.R.D. at 30 (citing *St. John v. Napolitano*, 274 F.R.D. 12, 19 (D.D.C. 2011)). Federal courts have considered the following factors in assessing whether a plaintiff has made allegations beyond mere "garden variety" emotional distress: "(1) the presence of a cause of action for intentional or negligent infliction of emotional distress; (2) an allegation of a specific mental or psychiatric injury or disorder; (3) a claim of unusually severe emotional distress; (4) a proffer of expert testimony to support a claim of emotional distress; and/or (5) a concession by the plaintiff that his or her mental condition is 'in controversy.'" *Id.*

### B. Motion to Quash

Plaintiffs move to quash the Subpoenas under Rule 45(d)(3)(A)(iii) and 45(a)(4). Pls.' Mot. to Quash at 1. Under Rule 45(d)(3)(A)(iii), upon timely motion, a district court may quash a subpoena which calls for disclosure of privileged matter, provided no waiver applies.[3] Under Rule 45(a)(4), "[i]f [a] subpoena commands the production of documents, electronically stored information, or other tangible things . . . then before it is served on the person to whom it is directed, a notice and copy of the subpoena must be served on each party." Fed. R. Civ. P. 45(a)(4). A court may quash a subpoena for failure to properly notify the opposing party. *See*

---

[3] A motion to quash is timely if it is filed within the subpoena's compliance period. *See e.g., In re Shelton Fed. Group, LLC,* 2017 Bankr. LEXIS 2085 at *3–4 (Bankr. D.D.C July 26, 2017). For purposes of this motion, the Court assumes Plaintiffs' Motion to Quash was timely.

5

*Cootes Drive LLC v. Internet Law Library, Inc.,* No. 01 CIV. 0877 (RLC), 2002 WL 424647, at *1 (S.D.N.Y. Mar. 19, 2002).

**C. Motion for a Protective Order**

Plaintiffs move for a protective order under Rule 26(c). Pls.' Mot. Prot. Ord. at 1. Under Rule 26(c) a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). While the court may issue an order to prevent disclosure of specific materials, "the burden is on the party seeking a protective order to demonstrate the need for secrecy." *See* Fed. R. Civ. P. 26(c); *Tavoulareas v. Wash. Post Co.*, 111 F.R.D. 653, 657 (D.D.C. 1986). A valid claim of privilege is considered sufficient cause for granting a protective order. *Banneker Ventures, LLC v. Graham*, 253 F. Supp. 3d 64, 69 (D.D.C. 2017). In addition, the court retains broad discretion to "limit[] the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(A), (D); *St. John*, 274 F.R.D. at 16 (citing *In re Sealed Case (Med. Records)*, 381 F.3d 1205, 1212 (D.C. Cir. 2004)). A court may limit discovery to, *inter alia*, protect a party's privacy rights. *Id.*

**IV. ANALYSIS**

Each of Plaintiffs' motions is premised on the theory that the contents of Plaintiffs' mental health and medical records are privileged under Maryland and District of Columbia Law.[4] *See* Pls.' Mot. Prot. Ord. at 1; Pls.' Mot. to Quash at 1; D.C. Code § 14-307(a); Md. Code, Health–Gen. §§ 4-302–4-307; Md. Code, Cts. & Jud. Pro. § 9-109. However, this Court is

---

[4] Defendants contend that the Court should strike Plaintiffs' Motion for a Protective Order in its entirety because Plaintiffs, in bringing this motion without arranging a telephone conference or seeking leave, violated the Scheduling Order established by this Court. *See* Defs.' Opp'n Prot. Ord. at 10. Although the Court does not find that such an error warrants striking Plaintiffs' motion, the Court warns Plaintiffs that a repetition of this failure shall result in denial of any future motions on this basis.

persuaded by Defendants' assertion that Plaintiffs have waived their physician-patient privilege by placing their own medical condition in issue in this litigation and claiming more than "garden variety" emotional distress.  *See* Defs.' Opp'n Prot. Ord. at 11.

In their Complaint, Plaintiffs allege that they suffered from stress as a result of Defendants' alleged conduct.  *See* Compl. ¶¶ 66–68 (alleging Plaintiff Burrows "suffered from physical manifestations of stress, including, but not limited to, difficulty sleeping and panic attacks"); *id.* at 88 (alleging that "[o]n or about September 22, 2016, Mr. Avila saw his doctor, who recommended that Mr. Avila not return to work . . . due to work-related stress").  Plaintiffs allege that this stress was so severe that, upon recommendation by their respective physicians, Plaintiffs required leave from work.  *See* Defs.' Opp'n Mot. Prot. Ord., Ex. 7 at 55; Defs.' Opp'n Mot. Prot. Ord., Ex. 6 at 105–07.  However, Plaintiffs maintain that they have not placed their medical condition at issue in the suit because they have alleged mere "garden variety" emotional distress.  Pls.' Mot. Prot. Ord. at 16.

When viewed in totality, Plaintiffs' allegations go beyond mere "garden variety" emotional distress.  Although Plaintiffs have disclaimed their intent to rely on an expert witness in establishing emotional distress, Pls.' Mot. Prot. Ord. at 19, each of their claims of distress appear unusually severe.  Plaintiffs each allegedly suffered from physical manifestations of stress, including panic attacks.  *See* Defs.' Opp'n Mot. Prot. Ord., Ex. 7 at 55; Defs.' Opp'n Mot. Prot. Ord., Ex. 6 at 3, 105–06; Compl. ¶ 88.  Plaintiff Burrows had difficulty sleeping, Compl. ¶ 88, and suffered from "mental-health related episodes" three times a week for a duration of eight hours per episode.  Defs.' Opp'n Mot. Prot. Ord., Ex. 7 at 55.  Not only was Plaintiff Avila diagnosed with anxiety and depression, Defs.' Opp'n Mot. Prot. Ord., Ex. 6 at 105, but he was described as "so emotional[ly] debilitated that he sought doctor's assistance and was prescribed

medication." Defs.' Opp'n Mot. Prot. Ord., Ex. 6 at 3.  In fact, both Plaintiffs were prescribed medication for specific mental health injuries and disorders resulting from the alleged actions of Defendant.  *See* Compl. ¶¶ 13, 88; Defs.' Opp'n Mot. Prot. Ord., Ex. 6 at 3; Defs.' Opp'n Mot. Prot. Ord., Ex. 7 at 2.  It is therefore apparent from the descriptions of their injuries that the emotional distress that Plaintiffs allegedly suffered goes beyond the mere "garden variety."

Moreover, Plaintiffs' emotional distress was severe enough to necessitate leave from work.  *See* Defs.' Opp'n Mot. Prot. Ord., Ex. 7 at 55 (alleging that Plaintiff Burrows required three months leave as a result of his distress); Compl. ¶ 88 (alleging that Plaintiff Avila's doctor recommended he take leave).  Further, Plaintiffs seek five million dollars in compensatory and punitive damages, based in part upon non-economic damages for emotional distress, an amount suggesting a claim of exceptionally severe emotional distress.  *See* Compl. ¶¶ 16–25; Defs.' Opp'n Mot. Prot. Ord., Ex. 2 at 7; Defs.' Opp'n Mot. Prot. Ord., Ex. 3 at 8.  Beyond referencing their entire document productions in establishing a basis for this large damage award, Plaintiffs have yet to provide a basis from which they calculated this amount.  *See* Defs.' Opp'n Mot. Prot. Ord. at 4.  Plaintiffs assert that they seek damages for mere "garden variety" emotional distress, but a request for a damages award of this unusually large amount indicates otherwise.

In considering all of these factors in combination, the Court finds that Plaintiffs' allegations of physical and mental health issues go beyond mere "garden variety" emotional distress, as such claims significantly exceed those of a "kind an ordinary person might experience following an episode of discrimination."  *See Porter*, 304 F.R.D. at 30 (citation omitted).  Because Plaintiffs have placed their medical condition at issue in the suit, the Court considers Plaintiffs' physician-patient privilege waived.

8

Because Plaintiffs' have waived the physician-patient privilege over the medical information at issue, the Court denies their Motion to Quash[5] and their request to issue a Protective Order preventing Defendants from seeking discovery on any of Plaintiffs' mental health or medical conditions. However, the Court finds it appropriate to limit the scope of discovery under Rule 26(c).[6] The Subpoenas request "all medical and personal records for Plaintiff[s], omitting nothing" dating back ten years through the present. Pls.' Mot. Prot. Ord. at 7. In their Motion for a Protective Order, Plaintiffs request that, should the Court find privilege waived, the Court modify and limit discovery. *Id*. at 22. Defendants are amenable to limiting the scope of their subpoenas to the extent that the modification "allows Defendants to verify the statements made by Plaintiffs in the complaint and in discovery and also allows Defendants to determine whether another cause could have contributed to the emotional distress Plaintiffs allege." Defs.' Opp'n Mot. Prot at 19. Both Plaintiffs and Defendants cite *St. John*, 274 F.R.D. at 17, as indicative of an order limiting the scope of subpoenas for medical records where emotional distress is at issue in a discrimination case. *See* Pls.' Mot. Prot. Ord. 22; Defs.' Opp'n Mot. Prot. at 19. This Court finds *St. John* informative in limiting the scope of the Subpoenas.

---

[5] Having found the privilege waived, the Court finds Plaintiffs' Motion to Quash the Subpoenas unavailing. Plaintiffs suggest that the Subpoenas should be quashed due to Defendants' failure to comply with notice requirements under Rule 45(a)(4). While there is some disagreement between the parties as to the exact date that the Subpoenas were served upon the medical providers, Defendants served notice, at the latest, contemporaneously. *See* Pls.' Mot. to Quash at 17. The Court is not persuaded that Defendant LPC Commercial's notice, even were it contemporaneous, prejudices Plaintiffs to an extent that would warrant quashing the Subpoenas. Plaintiffs were provided ample time to object to the Subpoenas under the circumstances.

[6] Both Plaintiffs and Defendants seek an award of reasonable expenses in the event of their respective success under this motion. *See* Pls.' Mot. Prot. Order at 13 (citing Fed. R. Civ. P. 26(c)(3); Fed. R. Civ. P. 37(a)(5); Defs.' Mot. Prot. Order at 9 (citing Fed. R. Civ. P. 37(a)(5)). Although Rule 37(a)(5)(C) provides that a court may apportion fees at its discretion if a motion for a protective order is granted in part and denied in part, neither party has established a sufficient basis for doing so here and therefore the Court declines to apportion fees.

Accordingly, the Court finds that the relevant time period for discovery of Plaintiffs' medical information "extends from two years prior to the first date of the alleged discrimination through the present." *St. John*, 274 F.R.D. at 17.[7]

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Quash is **DENIED** and Plaintiffs' Motion for a Protective Order is **GRANTED IN PART** and **DENIED IN PART**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: August 7, 2019                                      RUDOLPH CONTRERAS

                                                                                            United States District Judge

---

[7] While the Court rules on discoverability of this medical information, it leaves for another day the determination on the admissibility of that information, which may take into consideration any stipulation as to the scope of Plaintiffs' claims and proffers of evidence.